THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAKHOUL ELECTRIC, LLC,** *et al.* | **CIVIL ACTION** |
| v. | **No. 25-5689** |
| **CINCINNATI INSURANCE,** *et al.* | |

**Henry, J.**                                                                                           **May 26, 2026**

**<u>MEMORANDUM</u>**

After a car repair shop was damaged in a fire, the shop engaged an electrical contractor for restoration and forwarded its invoices for reimbursement from its insurer. The insurer and the shop could not come to an agreement on payments, so they turned to outside appraisers. The appraiser chosen by the insurer mentioned to his counterpart appraiser that the chosen contractor was known to engage in insurance fraud. The contractor sued the insurer for defamation on the grounds that it had fed a malicious rumor to the appraiser. Before the Court is a motion by the insurer to dismiss this count based on claimed immunities and privileges.

## I.    <u>BACKGROUND</u>[1]

On October 23, 2023, Joe's Battery and Tire Service in Bethlehem, Pennsylvania, suffered losses from a fire. Compl. ¶¶ 11, 14. Joe's Battery filed a claim for coverage with its insurer, Cincinnati Insurance, which opened the claim process. *Id.* ¶¶ 11–12. Joe's Battery then contacted plaintiffs Munhel Makhoul and Makhoul Electric, LLC (together, "Makhoul Electric"), for restoration services related to the fire. *Id.* ¶ 13. Joe's Battery then submitted invoices from Makhoul

---

[1] At this level, I accept the factual content of the complaint as true. *See infra* § II.

Electric to Cincinnati for reimbursement. *Id.* ¶ 16. When Cincinnati was slow to send payments, Joe's Battery hired attorney Angelo T. Almonti to assist. *Id.* ¶ 17.

Kevin Klatt, Sr., is an employee of Cincinnati. *Id.* ¶ 5. In May, 2025, Klatt reached out to Almonti's legal assistant David Bargeron to discuss the claim. *Id.* ¶ 18. During the call, Klatt informed Bargeron that Klatt had received an anonymous communication that Makhoul Electric routinely overcharges insurance carriers. *Id.* ¶ 19. Klatt also told Bargeron that he had filed a report of insurance fraud with a governmental fraud agency.[2] *Id.* ¶ 20.

Joe's Battery and Cincinnati could not come to an agreement on the claim, so Cincinnati invoked an appraisal clause in the Joe's Battery policy. *Id.* ¶ 21. Scott Warren would be the appraiser for Cincinnati, and George Gharzouzi would be the appraiser for Joe's Battery. *Id.* ¶ 22. When Warren and Gharzouzi met by phone to speak about the appraisal, Warren[3] told Gharzouzi that he had been told that Makhoul Electric had engaged in insurance fraud. The plaintiffs plead upon information and belief that Warren got this information from Klatt.

In its single count of defamation, the complaint accuses Cincinnati and of, in essence, telling a third party or parties that the plaintiffs are crooks. The defendants now move to dismiss the

---

[2] As this is phrased in the complaint, "Klatt informed David Bargeron that, in response to the anonymous communication, he filed a report of insurance fraud with the Lehigh County Insurance Fraud 'department.'" ¶ 20. The quotation marks around only *department* make uncertain whether the complaint stands by any of the other words verbatim. Furthermore, the paragraph continues, "Klatt was not specific as to whether he filed the insurance fraud complaint with the Lehigh County District Attorney, the Pennsylvania Attorney General or another entity." *Id*. Regardless, the discussion below concludes that it is of no moment legally whether the report was made to a city, county, state, or federal law enforcement agency, since the count of defamation does not concern the report itself.

[3] The complaint states,

> During the meeting between Mr. Warren and Mr. Gharzouzi, Mr. Scott informed Mr. Gharzouzi that that Plaintiffs were "known for price gouging." Mr. Warren specifically stated that he was told that Plaintiffs engaged in insurance fraud.

¶ 24. It seems clear from context that "Mr. Scott" was meant to refer to Scott Warren.

complaint on two grounds: First, because Pennsylvania law makes them immune from the repercussions of statements made to report or allege insurance fraud, and second, under doctrines of absolute judicial and conditional general privileges.

## II.  **LEGAL FRAMEWORK**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks and citations omitted). The rule "does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable." *Id.* (quotation marks omitted). It requires, more, however, than reciting "mere elements of a cause of action; instead, a complaint must allege facts suggestive of the proscribed conduct." *Id.* In reading the complaint, the Court must construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e).

Where a motion to dismiss relies on a claim of immunity, that "grant of immunity will be upheld only when immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006).

## III. **DISCUSSION**

The briefing in this matter disagrees somewhat on the central question of what acts are part of the conduct making up the alleged defamation. As noted above, Cincinnati employee Klatt, appraisers Warren and Gharzouzi, and plaintiffs' paralegal Bargeron all heard that Makhoul

Electric had allegedly engaged in insurance fraud. I begin by concluding that the complaint only concerns the publication of the allegation by Klatt to Gharzouzi. I then consider whether the defendants are due immunity or privilege that would be sufficient to grant the motion.

### A.  The Only Publication at Issue Is From Klatt to Warren

The complaint is inexact in its framing, and it could plausibly be read to address publication of allegations of criminality about Makhoul Electric to a few third parties. Read most expansively, the complaint mentions as possible parties to whom the statement was published, in approximate order of those publications: Possible law enforcement agencies, Cincinnati employee (and defendant) Klatt, appraisers Warren and then Gharzouzi, plaintiffs' counsel paralegal Bargeron. [4] The far clearer reading based on the action of the complaint, however, is the action laid out in ¶¶ 22–24, in which Warren tells Gharzouzi that Makhoul Electric was "known for price gouging" and "engaged in insurance fraud," information the plaintiffs believe came from Klatt. *See* Fed. R. Civ. P. 8(e).

This might still leave two separate defamatory actions: The publication of alleged defamatory matter by Klatt to Warren prior to the appraiser call and the similar publication by Warren to Gharzouzi on that call. Given that Makhoul Electric did not name Warren a defendant, however,

---

[4] There is an unusual lack of clarity as to what this case is about. The defendants describe as "[t]he gravamen of Makhoul Electric's claim [] that the Cincinnati Defendants defamed Makhoul Electric by reporting suspected insurance fraud to law-enforcement authorities." Br. in Support 1. Makhoul Electric responds that actually "the gravamen of Plaintiffs' Complaint is that Defendants provided false information to third-parties (not law-enforcement authorities) that Plaintiffs 'were known for price gouging' and that 'Plaintiffs routinely overcharged insurance carriers for work performed.'" Opp. 4 (quoting the complaint, with citations omitted). The defendants read the use of those quotations to take as waived any alleged reports to law enforcement but also to newly include statements to Makhoul Electric's counsel's paralegal. Reply 1–2, 6–7.

I am confident that my single-incident reading of the complaint is the best reading, but I will permit Makhoul Electric a short timetable in which to move for leave to amend the complaint in case my reading was too stingy for what the plaintiffs can allege.

and given the complaint's focus on Klatt as a defendant, compl. ¶ 25–29, the best reading focuses entirely on Klatt's single alleged publication to Warren.[5]

### B.  Insurance Fraud Prevention Immunities in Pennsylvania

Cincinnati and Klatt produce a small array of immunity provisions to prove that they cannot be sued. First, a provision in the criminal insurance fraud statute states that "[a]n insurer, and any agent, servant or employee thereof acting in the course and scope of his employment, shall be immune from civil or criminal liability arising from the supply or release of written or oral information to any entity duly authorized to receive such information by Federal or State law, or by Insurance Department regulations." 18 Pa.C.S. § 4117(f). Next, immunity provisions under the Insurance title chapter on Insurance Companies give that "[i]n the absence of fraud or bad faith, no person or his employes or agents shall be subject to civil liability and no civil cause of action shall arise against any of them for . . .[i]nformation relating to suspected fraudulent insurance acts or persons suspected of engaging in such acts furnished by them to or received from other persons subject to other persons subject to the provisions of this act." 40 P.S. § 474.1(a)(2). Finally, the Unfair Insurance Practices Act requires an insurer to cooperate with investigations taken under that act, immunizing it for that reporting and tolling its own deadlines where it notifies authorities of its suspicions. 40 P.S. §§ 325.42(4), 325.47, 325.44.

As to Scott Warren, the complaint offers a few pertinent facts: He is the appraiser for Cincinnati, ¶ 22, and he was on the call to meet with his counterpart for the plaintiffs, ¶ 23. The nature of Warren's relationship with Cincinnati (or any law enforcement agency) is not pleaded. Lacking

---

[5] This reading might run counter to the plaintiffs' characterization in briefing of the their complaint concerning defendants providing "provid[ing] false information to third-part*ies*," Opp. 4, but that is more easily explained as simply a more general way to talk about the conduct.

such information, the Court cannot conclude that Warren comes within any of the categories of people to whom the defendants are immune in making good faith statements about suspected insurance fraud.

The only real attempt by the defendants to draw the connection to one of these immunities is in their assertion that "convey[ing] the report of suspected fraudulent activity to the outside appraiser, Scott Warren, involves furnishing information to 'other persons subject to the provisions of this act.'" Br. in Support 9 (quoting 40 P.S. § 474.1). But the defendants do not demonstrate that an outside appraiser comes within "the provisions of this act." To determine this would at least require determining the scope of "this act." Section 474.1 was amended by 2010, Oct. 27, P.L. 952, No. 97, § 1, but that act did not meaningfully affect the paragraph in question, adding only the words "or persons suspected of engaging in such acts." "[T]his act" must therefore refer to the Insurance Company Law of 1921 (of which the present Section 474.1 was Section 349.1).[6] Outside appraisers appear in that act nowhere in that law as amended, as far as I can tell, appearing elsewhere only in the standard fire insurance contract text provided at 40 P.S. § 636. Although the character of the parties' appraisal clause is unknown at this level, it is notable that the appraiser in the standard contract is to be "disinterested." *Id.* § 2. That is to say, the appraiser is *not* an employee or agent of the party engaging him, but a third party standing apart. *See also* Br. in Support 9 ("The allegation that the Cincinnati Defendants conveyed the report of suspected fraudulent activity to the *outside appraiser* . . ." (emphasis added)).

At the level of a motion to dismiss, the Court will only grant a motion based on immunity where the immunity is clear from the face of the complaint. *Thomas v. Independence Twp.*, 463

---

[6] I do not know how codification of the acts worked. I will leave it to the parties to edify me at some later date.

F.3d 285, 295 (3d Cir. 2006). Because there is nothing on the face of the complaint that suggests the applicability of any of these three immunity statutes regarding information given to the outside appraiser, much less that proves it, I deny the motion.[7]

## IV.  <u>CONCLUSION</u>

For the above reasons, I will issue an order denying the defendants' motion to dismiss, permitting a short timetable during which Makhoul Electric may move for leave to amend, and then setting a deadline for responsive pleadings.

---

[7] I also deny the motion as it relates to both asserted privileges. As to the judicial privilege, I have determined that the only communication complained of is that made by Klatt to Warren. The complaint is silent as to any function Warren might perform within the system of "providing information to the proper authorities in connection with the suspected commission of a crime," *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991), and therefore that absolute privilege is inapposite.

Similarly, the defendants' brief suggestion that they should be permitted a privilege where "the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the [allegedly] defamatory matter will be of service in the lawful protection of the interest," Restatement (Second) of Torts § 594, is misplaced. The question of whether a conditional privilege applies is generally a factual matter put to the jury. *Montgomery v. Dennison*, 69 A.2d 520, 525 (1949) ("If there be any doubt as to these circumstances, the jury must find what the circumstances in fact were . . . then on their findings, the judge decides whether the occasion was privileged or not."). Since the complaint offers nothing about the nature of how Klatt allegedly passed information to Warren, except that it was based on anonymous information, dismissal cannot lie. *See id.* at 266–67 (information from an anonymous source "clearly did not constitute probable cause for the action he took . . . [and] the belief must have rested on reasonable and probable cause.").